UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ELIZABETH AMABLE and KAITLYN AMABLE, *individually and on behalf of all others similarly situated*, | |
| Plaintiffs, | 20-CV-3811 (KMK) |
| -v- | OPINION & ORDER |
| THE NEW SCHOOL, | |
| Defendant. | |

<u>Appearances:</u>

Alec M. Leslie, Esq.
Sarah Westcot, Esq.
Philip L. Fraietta, Esq.
Bursor & Fisher, P.A.
New York, NY
*Counsel for Plaintiffs*

Jonathan M. Kozak, Esq.
Isaac J. Burker, Esq.
Susan D. Friedfel, Esq.
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

Elizabeth Amable and Kaitlyn Amable ("Plaintiffs") bring this putative class action against The New School ("Defendant"), alleging that Defendant's transition to online classes in the midst of the COVID-19 pandemic deprived students of the educational experience for which they had bargained. Plaintiffs assert claims against Defendant for (1) breach of contract, (2) unjust enrichment, (3) conversion, and (4) money had and received. Before the Court is Defendant's Motion To Dismiss the First Amended Complaint (the "Motion"). (*See* Not. of Mot. (Dkt. No. 23).) For the following reasons, the Motion is granted.

I.  Background

A.  Factual Background

The following facts are drawn from Plaintiffs' First Amended Complaint and are taken as true for purposes of resolving the instant Motion.

In January 2020, Plaintiff Kaitlyn Amable ("Amable") began the spring 2020 semester as an undergraduate student at The New School, a private university in New York City that enrolls over 10,000 students and offers approximately 80 "different degree/diploma programs and majors."  (First Am. Compl. ("FAC") ¶¶ 2, 18, 23, 29 (Dkt. No. 14).)  Amable was pursuing a Bachelor of Fine Arts degree in Defendant's "Communication Design" program, which "relies extensively on in-person instruction, peer collaboration, and access to [Defendant's] facilities." (*Id.* ¶¶ 17–18.)  Amable and her mother, also a Plaintiff in this Action, collectively paid Defendant approximately $15,000 in tuition and fees for the spring 2020 semester.  (*Id.*)

Although the spring semester began on January 21, 2020 and proceeded unremarkably for the next eight weeks, the COVID-19 pandemic brought normal university operations to an abrupt halt in mid-March.  Defendant suspended in-person teaching for the remainder of the spring semester.  (*See id.* ¶¶ 9–10.)  Thus, from March 12 until the end of the semester on May 11, all classes were conducted online.  (*Id.* ¶¶ 8, 11.)

Plaintiffs allege that by shifting its instruction to an online format, "Defendant did not deliver the educational services, facilities, access and/or opportunities that [they] and the putative class contracted and paid for."  (*Id.* ¶ 12.)  In other words, Plaintiffs contend that under their contractual agreement with Defendant, they agreed to pay tuition and fees in exchange for *in-person* academic instruction and related services.  (*Id.* ¶¶ 3, 15.)  Plaintiffs do not pinpoint a contractual provision that explicitly guarantees in-person instruction, but instead invoke various

representations made in Defendant's course catalog and other documents.  (*See id.* ¶¶ 5–7.)  The spring 2020 course catalog (the "Course Catalog"), for example, allows students to search for and select courses based on their preferred "Campus," which includes either New York City, Paris, or the "Online" campus.  (*Id.* ¶ 6.)  Amable's course schedule for the spring 2020 semester (the "Course Schedule") indicated that each of her classes would take place on Defendant's New York City campus, as opposed to its "Online" campus.  (*Id.* ¶ 23.)  She therefore "understood and believed that every course in which [she] enrolled was to be taught in-person."  (*Id.* ¶ 22.)  Plaintiffs also point to Defendant's "Attendance Statement," which emphasizes the importance of regular class attendance and participation, (*see id.* ¶ 7), as well as certain promotional language on Defendant's website, which "markets [the] on-campus experience as a benefit of enrollment, (*id.* ¶ 38.  Plaintiffs allege that "the in-person nature of the courses was part of the benefit of the bargain," and they would not have paid the same amount in tuition and fees—if any—had they known that part of the instruction would be delivered online.  (*Id.* ¶ 22.)

According to Plaintiffs, the transition to online instruction not only violated their contractual agreement with Defendant, but also produced a learning environment that was "subpar in practically every aspect."  (*Id.* ¶ 12.)  In particular, Plaintiffs point to the "lack of facilities, materials, and access to faculty," as well as the lost "opportunity for collaborative learning and in-person dialogue, feedback, and critique."  (*Id.*; *see also id.* ¶ 40.)  They argue that the remote instruction offered during the pandemic "[was] not even remotely worth" the amount they contracted for and paid under the expectation that classes would be taught in-person.  (*Id.* ¶ 40.)  Yet, despite allegedly violating its contractual agreement with Plaintiffs and providing an inferior alternative to regular, in-person instruction, Defendant has not refunded "any" of the tuition or fees Plaintiffs paid for the spring 2020 semester.  (*Id.* ¶ 14.)  Plaintiffs maintain that

although Defendant may "not have [had] a choice in cancelling in-person classes, it nevertheless has improperly retained funds for services it [did] not provid[e]." (*Id.* ¶ 15.)

Accordingly, Plaintiffs brought claims for (1) breach of contract, (2) unjust enrichment, (3) conversion, and (4) money had and received on behalf of themselves and a putative class of similarly situated individuals. (*See id.* ¶¶ 51–85.) They seek disgorgement of a pro-rated portion of tuition and fees proportionate to the amount of time that classes were offered online "and campus services ceased being provided." (*Id.* ¶¶ 16, 63, 68, 78.) Plaintiffs also seek an order certifying a class and subclass under Rule 23 of the Federal Rules of Civil Procedure, compensatory and punitive damages, prejudgment interest, an order of restitution "and all other forms of equitable monetary relief," any injunctive relief deemed proper, and an order awarding reasonable attorneys' fees to the putative class counsel. (*See* FAC Prayer for Relief.)

B. Procedural History

Plaintiffs filed their initial Complaint on May 15, 2020, (Dkt. No. 1), and their First Amended Complaint on September 2, 2020, (Dkt. No. 14). On September 16, 2020, Defendant filed a pre-motion letter seeking leave to file a motion to dismiss, (Dkt. No. 15), to which Plaintiffs responded the following week, (Dkt. No. 16). Following a pre-motion conference on October 7, 2020, (*see* Dkt. (minute entry for Oct. 7, 2020)), the Court adopted a briefing schedule for the instant Motion, (Dkt. No. 21). Pursuant to this schedule, Defendant filed the instant Motion and supporting papers on November 20, 2020. (Dkt. Nos. 23–26.) Plaintiffs filed their Opposition papers on December 23, 2020, (Dkt. Nos. 27–28), and, after receiving leave to file an oversized brief, (Dkt. Nos. 29–30), Defendant filed its Reply on January 7, 2021, (Dkt. No. 31). On February 2, 2021, Defendant provided notice of supplemental authority supporting the instant Motion. (Dkt. No. 32). On March 26, 2021, Plaintiffs offered supplemental authority

in opposition to same.  (Dkt. No. 33.)  On March 31, 2021, Defendant responded to Plaintiffs'

proffer of supplemental authority and offered additional authority in support of its Motion.  (Dkt.

No. 34.)  Finally, Defendant submitted an additional notice of supplemental authority on April

26, 2021.  (Dkt. No. 35.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that although a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of

his [or her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (alteration omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.* (alteration and internal quotation marks omitted).

Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the

speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated

adequately, it may be supported by showing any set of facts consistent with the allegations in the

complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that

is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his] claims across the line from

conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679

("Determining whether a complaint states a plausible claim for relief will . . . be a context-

specific task that requires the reviewing court to draw on its judicial experience and common

sense.  But where the well-pleaded facts do not permit the court to infer more than the mere

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader

is entitled to relief.'" (alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2)));

*id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-

pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed

with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the

factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot.*

*Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699

F.3d 141, 145 (2d Cir. 2012)).  Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district

court must confine its consideration to facts stated on the face of the complaint, in documents

appended to the complaint or incorporated in the complaint by reference, and to matters of which

judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.

1999) (internal quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317

(S.D.N.Y. 2016) (same).

## B.  Analysis

Plaintiffs' principal claim is that Defendant breached a contractual obligation to "provide

in-person educational services, experiences, opportunities, and other related services" when it

transitioned to online classes and modified its operations in the wake of the COVID-19

pandemic.  (FAC ¶ 53.)  In the alternative, Plaintiffs also assert claims for unjust enrichment and

money had and received.  (*Id.* ¶¶ 64–70, 79–85; *see also* Pls.' Mem. of Law in Opp'n to Def.'s

Mot. ("Pls.' Opp'n") 24–25 (Dkt. No. 27).)  After addressing a threshold issue—the so-called

"educational malpractice" doctrine—the Court will address each claim in turn.  The Court need

not address Plaintiffs' conversion claim, (*see* FAC ¶¶ 71–78), which they conceded in their

Opposition brief, (*see* Pls.' Opp'n 25 n.5).

    1.  Educational Malpractice

As a threshold matter, the Court will consider Defendant's argument that Plaintiffs have

raised impermissible "educational malpractice" claims.  (Def.'s Mem. of Law in Supp. of Mot.

("Def.'s Mem.") 23–25 (Dkt. No. 26).)  *Cf. Goldberg v. Pace Univ.*, —F. Supp. 3d—, 2021 WL

1565352, at *5 (S.D.N.Y. Apr. 21, 2021) (making threshold determination as to whether the

plaintiff's claims sounded in educational malpractice); *Hassan v. Fordham Univ.*, —F. Supp.

3d—, 2021 WL 293255, at *2–4 (S.D.N.Y. Jan. 28, 2021) (same).

"Educational malpractice" claims, which "ask the Court to involve itself in the subjective

professional judgments of trained educators," are "not cognizable under New York law."

*Goldberg*, 2021 WL 1565352, at *5 (citing *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207

(S.D.N.Y. 1998)).  Indeed, New York courts are to apply the "utmost restraint" when confronted

with disputes in academia, *Hassan*, 2021 WL 293255, at *2 (quoting *Olsson v. Bd. of Higher

Educ.*, 402 N.E.2d 1150, 1152 (N.Y. 1980)), a policy which reflects the view that professional

educators are uniquely capable of deciding what is "'appropriate and necessary' for educational

institutions to function," *id.* (quoting *Gertler v. Goodgold*, 487 N.Y.S.2d 565, 569 (App. Div.

1985), *aff'd*, 489 N.E.2d 748 (N.Y. 1985)).  Courts have therefore "refused to substitute their

judgment for that of university officials or to review the day-to-day administration of academic

policies."  *Id.* (quoting *Sirohi v. Lee*, 634 N.Y.S.2d 119, 120 (App. Div. 1995)); *see also Torres v.

Little Flower Children's Servs.*, 474 N.E.2d 223, 226 (N.Y. 1984) (observing that courts will not

be "thrust into the position of reviewing the wisdom of educators' choices and evaluations").

Accordingly, when the "essence of the complaint is that the school breached its agreement to provide an effective education," or the plaintiffs ask a court "to evaluate the course of instruction" or "review the soundness of the method of teaching that has been adopted by an educational institution," a court must dismiss the complaint. *Hassan*, 2021 WL 293255, at *3 (quoting *Ansari v. N.Y. Univ.*, No. 96-CV-5280, 1997 WL 257473, at *3 (S.D.N.Y. May 16, 1997)). Although students may still plead a viable breach of contract claim against their college or university where the institution is alleged to have breached a specific promise, *see* Section II.B.2 *infra*, plaintiffs may not survive a motion to dismiss by packaging an educational malpractice claim as a claim for breach of contract, *see Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("New York law does not recognize a claim for 'educational malpractice,' and a student may not seek to avoid this rule by couching such a claim as a breach of contract claim." (citation omitted)); *Goldberg*, 2021 WL 1565352, at *5 (claims alleging educational malpractice "must be dismissed even if otherwise packaged—e.g., as alleging breach of contract" (italics omitted)). Here, Defendant argues that Plaintiffs' breach of contract and other claims are merely "repackaged educational malpractice claims." (Def.'s Mem. 23.)

Defendant's argument has some merit, particularly to the extent Plaintiffs draw explicit comparisons between the alleged quality of in-person versus online courses. As noted, Plaintiffs aver that the "online learning options" offered to students were "subpar in practically every aspect" and were a "shadow" of the normal, in-person learning options, "from the lack of facilities[] [and] materials, . . . [to the lack of] access to faculty." (FAC ¶ 39.) They allege that students were "deprived of the opportunity for collaborative learning and in-person dialogue, feedback, and critique." (*Id.*) Accordingly, Plaintiffs assert that the post-pandemic instruction

offered online was "in no way the equivalent of the in-person education [which they] contracted and paid for," nor was it "remotely worth" the charged tuition.  (*Id.* ¶ 40.)

In *Hassan*, a recently decided case from this District, the court considered identical language drafted by the same counsel representing Plaintiffs in the instant matter.  *See* 2021 WL 293255, at *3.  As the court noted, these assertions regarding the quality of an institution's online instruction "raise[] very serious concerns in light of the educational malpractice doctrine," *id.*, a view this Court shares.  The *Hassan* court concluded, however, that "[b]ecause these allegations primarily would impact the damages element of [the] [p]laintiff's contract claim," they did not "form the 'essence' of the [c]omplaint, such that [the] [p]laintiff's claims should be barred entirely at [the motion to dismiss] stage."  *Id.* at *4.

As was true in *Hassan*, the essence of Plaintiffs' First Amended Complaint is a claim that Defendant made—and then breached—a specific promise to provide in-person teaching and other learning opportunities.  *Cf. id.* at *3 ("The [c]omplaint alleges that Fordham made a promise . . . to provide in-person educational services.").  Here, as there, Plaintiffs "focus[] on statements in documents issued by [Defendant] to its students, such as the university's course catalog, that form the contractual relationship between the university and student body."  *Id.* (*See* FAC ¶¶ 4–6, 22, 54–56, 58.)  To determine whether the Course Catalog and other documents stated a specific promise to provide in-person instruction, the Court need not "question[] the judgments of educational professionals," and thus, Plaintiffs' claims "are not barred by the educational malpractice doctrine, because they are sufficiently grounded in whether an alleged promise for educational services was made and breached."  *Hassan*, 2021 WL 293255, at *3.  The Court's determination in this regard aligns with similar conclusions by other courts in this District and a majority of district courts nationwide.  *See In re Columbia Tuition*

*Refund Action*, —F. Supp. 3d—, 2021 WL 790638, at *6 (S.D.N.Y. Feb. 26, 2021) ("*Columbia*") ("The [c]ourt . . . joins the majority of district courts around the country that have declined to hold, at least on a motion to dismiss (or judgment on the pleadings), that claims arising from universities' adoption of online instruction in response to the COVID-19 pandemic are barred under the educational malpractice doctrine." (gathering cases)); *see also Goldberg*, 2021 WL 1565352, at *6 (declining to dismiss the plaintiff's claims as barred by the educational malpractice doctrine—despite the plaintiff's statements suggesting that his "online education was less efficacious than his earlier in-person classes"—because the "heart" of the plaintiff's breach of contract claim was "that [the university] allegedly made specific promises to students in [the plaintiff's] program that instruction would be in person"); *Zagoria v. N.Y. Univ.*, No. 20-CV-3610, 2021 WL 1026511, at *2–3 (S.D.N.Y. Mar. 17, 2021) (holding that the plaintiff's breach of contract claims were not barred by the educational malpractice doctrine because they were "sufficiently grounded in contract," notwithstanding the plaintiff's allegations that the online education adopted in response to COVID-19 was "less valuable" than, and "not equivalent in nature or value to[,] traditional in-classroom on-campus education" (brackets omitted)); *Hassan*, 2021 WL 293255, at *3.  As the court noted in *Hassan*, however, to the extent Plaintiffs ask the Court to evaluate the quality of a particular method of instruction, the Court will not "enter the classroom and determine whether . . . the judgments and conduct of professional educators were deficient."  2021 WL 293255, at *4 (quoting *Paladino v. Adelphi Univ.*, 454 N.Y.S.2d 868, 873 (App. Div. 1982)).

The Court now turns to consider the merits of Plaintiffs' claims.

2.  Breach of Contract

As a general matter, "to state a claim for breach of contract, a plaintiff must allege the existence of an agreement; adequate performance of the contract by the plaintiff; breach of contract by the defendant; and damages." *Hassan*, 2021 WL 293255, at *4; *see also Arch Specialty Ins. Co. v. TDL Restoration, Inc.*, No. 18-CV-6712, 2021 WL 1225447, at *6 (S.D.N.Y. Mar. 31, 2021) (same).  Defendant argues that Plaintiffs have not identified a specific promise in which it agreed to provide exclusively in-person instruction, and that, even if there were such a promise, Plaintiffs cannot adequately plead the breach or damages elements of their contract claim.  (Def.'s Mem. 9, 11–12, 14.)  Defendant also argues that this claim should be dismissed under the doctrines of acceptance and impossibility of performance.  (*See id.* at 16–18.)  The Court will address these arguments only as necessary to resolve the instant claim.

Under New York law, there is an implied contract between a student and her college or university.  *Goldberg*, 2021 WL 1565352, at *7; *see also Papelino*, 633 F.3d at 93 ("Under New York law, an implied contract is formed when a university accepts a student for enrollment . . . ."); *Columbia*, 2021 WL 790638, at *2 (recognizing that the "relationship between an institution of higher education and its students is 'contractual in nature'" (citation omitted)).  The "essence" of this implied contract is that the academic institution "must act in good faith in its dealings with its students," *Olsson*, 402 N.E.2d at 1153; *see also Goldberg*, 2021 WL 1565352, at *7 (same), and "[t]he terms of th[is] implied contract are contained in the university's bulletins, circulars[,] and regulations made available to the student," *Papelino*, 633 F.3d at 93 (citation and internal quotation marks omitted); *see also Columbia*, 2021 WL 790638, at *2 (same); *Hassan*, 2021 WL 293255, at *4 (same).  "The interpretation of a university's

catalogue, like the interpretation of any contract, is a matter of law for the Court." *Columbia*, 2021 WL 790638, at *2 (citation omitted).

To state a claim for breach of this implied contract, "a student must identify specific language in the school's bulletins, circulars, catalogues[,] and handbooks which establishes the particular 'contractual' right or obligation alleged by the student." *Columbia*, 2021 WL 790638, at *2 (citation omitted); *see also Goldberg*, 2021 WL 1565352, at *7 (observing that the student "must identify specifically designated and discrete promises" (citation and internal quotation marks omitted)). Stated differently, the student "must point to a provision that guarantees 'certain specified services,'" *Columbia*, 2021 WL 790638, at *3 (quoting *Baldridge v. State*, 740 N.Y.S.2d 723, 725 (App. Div. 2002)), as opposed to a "general statement of policy," *id.* (brackets and citation omitted), "or to statements of 'opinion or puffery,'" *id.* (quoting *Bader v. Siegel*, 657 N.Y.S.2d 28, 29 (1st Dep't 1997)). The Court's role, consequently, "is circumscribed to enforcing specific promises." *Goldberg*, 2021 WL 1565352, at *7 (quoting *Ford v. Rensselaer Polytechnic Inst.*, —F. Supp. 3d—, 2020 WL 7389155, at *3 (N.D.N.Y. Dec. 16, 2020)). "General policy statements and broad and unspecified procedures and guidelines will not suffice." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (citation and internal quotation marks omitted); *see also, e.g.*, *Chira v. Columbia Univ. in N.Y.C.*, 289 F. Supp. 2d 477, 485–86 (S.D.N.Y. 2003) (dismissing breach of contract claim where the plaintiff could not "point[] to [a] document or conversation that [gave] rise to a promise which [the institution] breached"); *Gally*, 22 F. Supp. 2d at 207 (noting that "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted").

Here, as stated, Plaintiffs allege that Defendant made a specific promise to "provide *in-person* educational services, experiences, opportunities, and other related services" in exchange for tuition and fees.  (FAC ¶ 3 (emphasis added); *id.* ¶ 53.)  Plaintiffs attempt to locate that promise in a set of documents published by Defendant, most notably (i) its Course Catalog, (*see id.* ¶¶ 4–6, 22, 54–56, 58), (ii) Amable's Course Schedule, (*see id.* ¶ 23), (iii) Defendant's official "Attendance Statement," (*see id.* ¶ 7), and (iv) a promotional statement posted to Defendant's website (the "Promotional Statement"), (*see id.* ¶ 38).  The Court will first consider whether the Course Catalog and Course Schedule state a specific promise to provide exclusively in-person instruction.  It will then conduct the same inquiry with respect to the Attendance Statement and Promotional Statement.

As screenshots in the First Amended Complaint illustrate, Defendant's Course Catalog allowed students to search for and select classes based on their preferred campus—New York City, Paris, or the "Online" campus.  (*Id.* ¶ 6.)  Published in the pre-pandemic era, the Course Catalog presupposes the availability of two distinct modes of instruction: students seeking online classes could enroll through the "Online" campus, while those who preferred in-person classes could enroll through the New York City or Paris campuses.  Indeed, the Course Catalog provided specific dates, times, and locations for courses offered on the New York City campus, (*see id.* ¶ 5), and Amable's Course Schedule indicated that at least three of her four classes would be taught in person, (*id.* ¶ 23).[1]  Plaintiffs contend that by "setting forth the details of in-person educational services" in its Course Catalog, Defendant "indicated classes would be administered

---

[1] Although the information provided for three of Amable's classes—(i) "Analog Photography," (ii) "Artist's Books Topics: Pictorial Narratives in Book Form," and (iii) "This is Not a Pipe: Art and the Surreal"—indicates that they were to be taught in person, Amable's fourth class, "Senior Thesis 2," does not specify a particular meeting location.  (*See* FAC ¶ 23.)

in an in-person, on-campus setting." (*Id.* ¶ 58.)  Plaintiffs' position appears to be that Defendant's representations in this regard constituted a binding promise to provide exclusively in-person instruction.  (*See id.* ¶¶ 22–23, 54, 58.)

In recent months, however, four different courts in this District have considered—and rejected—arguments that are virtually identical to those Plaintiffs raise here.

In *Hassan*, the plaintiff brought a breach of contract claim against Fordham University based on its transition to online instruction, arguing that the university had agreed to provide "in-person educational services, experiences, opportunities, and other related services."  *See* 2021 WL 293255, at *5 (record citation omitted).  There, as here, the plaintiff attempted to locate that promise in the university's course catalog, "which included information identifying the campus, building, and room where each course was to take place," and which contained a search filter enabling students to search for classes based on whether they were taught in person or online. *Id.*  As here, the plaintiff also alleged that he "understood that each course for which he enrolled would be taught in person . . . based on the catalog's identification of an on-campus location for each class," as well as the fact that other classes were designated as being online only.  *Id.*  (*Cf.* FAC ¶ 22.)  The court rejected the plaintiff's theory, holding that none of Fordham's statements "constitute[d] a specific promise . . . to provide 'certain specified services.'"  2021 WL 293255, at *6 (quoting *Baldridge*, 740 N.Y.S.2d at 943).  Although Fordham's course catalog "contain[ed] informational guidance regarding . . . a course's instructor, location, and schedule[,]" the Honorable Kimba M. Wood explained, the catalog made "no express statements promising that these aspects of a course were not subject to change."  *Id.*  The catalog descriptions were not comparable, for example, to a specific promise to provide a particular number of instructional hours or facilities of a certain quality.  *Id.*; *cf. Ansari*, 1997 WL 257473,

at *3 (upholding contract claims based on institution's unfulfilled promise to provide "state-of-the-art facilities . . . [and] program activities from 9:00 A.M. to 4:00 P.M. every day").  The court therefore dismissed the plaintiff's breach of contract claim.  *See* 2021 WL 293255, at *7.

In *Columbia*, the plaintiffs challenged Columbia University's post-pandemic shift to online teaching under the same theory, arguing that the university had breached a contractual obligation to provide in-person classes and other on-campus services.  2021 WL 790638, at *2. There, as in *Hassan* and the instant matter, the plaintiffs argued that this contractual obligation stemmed in part from the university's online course registration portal, which provided "class meeting schedules, locations, and physical attendance requirements."  *Id.* at *3 (record citation omitted).  The plaintiffs also emphasized that Columbia—like Fordham and Defendant—offers "certain classes and degree programs on a fully online basis," and distinguishes those courses and programs on its website.  *Id.* (record citation and alteration omitted).  As the Honorable Jesse M. Furman discussed, however, "the references to classroom locations and physical attendance requirements in Columbia's syllabi, departmental policies and handbooks, and course registration portal" do not "imply a contractual entitlement to continued instruction in the same location and manner."  *Id.* at *4.  "They merely memorialize the pre-pandemic practice," without "offer[ing] [a] guarantee that it would continue indefinitely."  *Id.*  Finally, Judge Furman observed that although students in one of Columbia's "fully online" programs might have a claim to exclusively online instruction, "[i]t does not follow . . . that students in *other* programs . . . were contractually entitled to exclusively in-person instruction."  *Id.* (record citation omitted).  As in

*Hassan*, therefore, the court in *Columbia* dismissed the plaintiffs' breach of contract claim insofar as it was based on an alleged entitlement to in-person classes.  *See id.*[2]

In *Morales v. New York University*, No. 20-CV-4418, 2021 WL 1026165 (S.D.N.Y. Mar. 17, 2021), the plaintiffs brought a breach of contract claim against New York University, arguing that the university had promised to provide exclusively in-person instruction, *id.* at *1.  Their claim was premised on the university's course catalog, which identified "specific buildings and room numbers" for listed courses, and which also "had a search function that allowed [students] to search for courses and listed the course "Instruction Mode" as "In Person."  *Id.* (record citations and brackets omitted).  The plaintiffs also argued that they had deliberately chosen "an on-campus experience" as opposed to the university's online course offerings.  *Id.*  Relying on Judge Furman's opinion in *Columbia*, the Honorable George B. Daniels dismissed the plaintiffs' contract claim, concluding that the course catalog's references to specific locations and instructional format did "not imply a contractual entitlement to continued instruction in the same location and manner."  *Id.* (quoting *Columbia*, 2021 WL 790638, at *4).  To the extent the plaintiffs sought to rely on various advertising materials from the university's website and brochures, Judge Daniels held that such materials were non-actionable statements of "opinion or puffery."  *Id.* at *1 n.1.

---

[2] The *Columbia* decision resolved a pair of motions in two separate actions, one brought against Pace University and the other against Columbia.  2021 WL 790638, at *1.  Although the cases were not formally consolidated, Judge Furman decided to resolve Pace's motion for judgment on the pleadings and Columbia's motion to dismiss in a single opinion in light of their similar issues.  *Id.*  While Judge Furman dismissed the Columbia plaintiffs' breach of contract claim for the reasons discussed above, he concluded that a similar claim against Pace could go forward based on the fact that the school's course registration portal allegedly stated that on-campus classes would be "taught with *only* traditional in-person, on-campus class meetings."  *Id.* at *5 (record citation omitted).

Finally, in *Goldberg*, the plaintiff brought a similar breach of contract claim against Pace University based on its transition to online teaching. *See* 2021 WL 1565352, at *7–8. There too, the plaintiff alleged that the university had "specifically promised . . . in-person learning . . . via statements in its advertisements, syllabus, and official catalogues." *Id.* at *7. For example, the plaintiff invoked the fact that Pace offers distinct online programs, and pointed to statements in his syllabus "presuppos[ing], at a minimum," that his course would meet in person. *Id.* Relying on *Hassan* and *Columbia*, the Honorable Paul A. Engelmayer rejected the plaintiff's arguments. *See id.* at *7–9. "That Pace offers exclusively online programs," Judge Engelmayer explained, "does not imply that students in traditional in-person programs . . . were promised exclusively in[-]person instruction." *Id.* at *8. Similarly, statements in the plaintiff's syllabus may have "describe[d]" the university's "regular practice" of providing in-person instruction, but they did not commit the university exclusively to that practice." *Id.* The court therefore dismissed the plaintiff's breach of contract claim to the extent it was premised on Pace's shift to online instruction. *See id.* at *9.

For the same reasons outlined in the foregoing cases, Plaintiff's breach of contract claim must be dismissed insofar as it relies on an alleged promise in Defendant's Course Catalog or Amable's Course Schedule. Although these documents envision in-person instruction, details regarding class times and locations do not "constitute[] a specific promise" to provide exclusively in-person teaching. *See Hassan*, 2021 WL 293255, at *6; *Columbia*, 2021 WL 790638, at *4 (holding that "references to classroom locations and physical attendance requirements" do not "imply a contractual entitlement to continued instruction in the same location and manner"). Relatedly, the fact that Defendant offered separate online courses prior to the pandemic "does not imply that students in traditional in-person programs . . . were promised

exclusively in[-]person instruction." *Goldberg*, 2021 WL 1565352, at \*8; *see also Zagoria*, 2021 WL 1026511, at \*5 (concluding that "[t]he presentation of different instruction options is not an express promise that [a university] will be limited in the future from changing instruction modalities"); *Columbia*, 2021 WL 790638, at \*4.  Plaintiffs fail to identify any other representations in the Course Catalog or Course Schedule which might conceivably bind Defendant to an exclusive mode of instruction, and thus, they have failed to identify a "specifically designated and discrete promise[]" which Defendant could have breached. *See Goldberg*, 2021 WL 1565352, at \*7 (citation omitted).

Plaintiffs invoke two other statements as the potential source of Defendant's promise to provide in-person instruction.  Neither can support Plaintiffs' contract claim.  The Attendance Statement provides that "[r]egular attendance and class participation are important factors in student learning," and exhorts faculty "to articulate this idea" and "monitor student progress and attendance regularly."  (FAC ¶ 7 (alteration in original).)  As in *Hassan*, however, this "policy makes no distinctions among different modes of instruction," 2021 WL 293255, at \*6, and would therefore apply to online classes no less than to in-person classes, *id.* ("[T]racking attendance is not a policy that on its face applies only to an in-person course."); *see also Goldberg*, 2021 WL 1565352, at \*8 (same); *accord Lindner v. Occidental Coll.*, No. 20-CV-8481, 2020 WL 7350212, at \*8 (C.D. Cal. Dec. 11, 2020) ("[R]egular class attendance is possible during both in-person and virtual instruction.").[3]  Thus, the Attendance Statement does not establish a promise to

---

[3] Particularly because Defendant raised this point in its opening brief, (*see* Def.'s Mem. 10), it is striking that Plaintiffs had no answer for this argument in their Opposition, (*see* Pls.' Opp'n 14–15).  Plaintiffs instead invoke the syllabus in one of Amable's courses—"Sex, Dreams, and Politics: Art and the Surreal"—which indicates that "Participation/Attendance" comprised 20% of her final grade.  (*Id.*)  The argument that such a policy "conferred a contractual obligation on Ms. Kaitlyn Amable . . . to attend classes *in-person*," (*id.* at 15 (emphasis added)), is unpersuasive.  Such an attendance policy would apply to online classes just as it would to in-

provide exclusively in-person instruction.  *See Goldberg*, 2021 WL 1565352, at *8 (finding that

an attendance policy which made no distinction between in-person and online learning did not

establish a contractual obligation to provide exclusively in-person classes); *Columbia*, 2021 WL

790638, at *4 (concluding that "physical attendance requirements in Columbia's syllabi,

departmental policies[,] and handbooks" did not establish "a contractual entitlement" to in-

person teaching); *Hassan*, 2021 WL 293255, at *6 (explaining that university's attendance policy

was "more akin to general statements of policy than to specifically designated and discrete

promises," and did not give rise to a specific promise to provide in-person teaching (citation and

internal quotation marks omitted)).[4]

Plaintiffs also rely on the Promotional Statement, which was posted to Defendant's

website and states as follows:

> Find your community.  Build lifelong friendships with students who share your
> interests, passions, and perspectives.  Whether you're on our main campus in New
> York City or our Parsons Paris campus, the boundaries of the classroom dissolve as
> the city becomes your studio, rehearsal space, and research center.

---

person classes, and, in any event, there is nothing in the cited portion of the syllabus which
promises students that the class will be taught exclusively in person.  Plaintiffs make no effort to
address the fact that neither the Attendance Statement nor the attendance policy in one of
Amable's courses distinguishes between in-person and online attendance.

[4] Defendant argues that even if the Course Catalog or Attendance Statement contained a
specific promise to provide exclusively in-person teaching, Plaintiffs' claim still falters in view
of Defendant's "reservation of rights" in the 2019-20 academic catalog and the "Your Right To
Know" section of its website.  (*See* Def.'s Mem. 10–11.)  That provision states that Defendant
"reserves the right to change without notice any content in its print or online materials, including
but not limited to tuition, fees, policies, degree programs, names of programs, course offerings,
academic activities, academic requirements, facilities, faculty, and administrators."  (*Id.* at 11.)
Because the Court finds that Defendant made no specific promise to provide exclusively in-
person teaching, it need not determine whether Defendant's reservation of rights would have
excused such a promise.  *Cf. Columbia*, 2021 WL 790638, at *5 (considering whether a
disclaimer in Pace University's academic catalog was broad enough to excuse a specific promise
that certain courses would be "taught with only traditional in-person, on-campus class meetings"
(record citation and emphasis omitted)).

(FAC ¶ 38.)  Though this statement may indeed "market[] [Defendant's] on-campus experience as a benefit of enrollment," (*id.*), it also is a classic example of "mere 'opinion or puffery' that is 'too vague to be enforced as a contract,'" *Columbia*, 2021 WL 790638, at *4 (quoting *Bader*, 657 N.Y.S.2d at 29) (holding that marketing materials advertising "the on-campus experience" were insufficient to support a breach of contract claim); *see also Hassan*, 2021 WL 293255, at *5–6 (same).

In their Opposition brief, Plaintiffs propose another source of Defendant's supposed obligation to provide exclusively in-person instruction, namely the Parties' "prior course of conduct." (Pls.' Opp'n 11.)  They argue that because Amable "showed up for in-person classes and otherwise had access to campus facilities and services every day of the week for months leading up to the time that [Defendant] shut down," it is "unequivocally" clear the Parties "had a meeting of the minds for students to take classes in person and have the many benefits of access to Defendant's physical campuses for the entire semester." (*Id.*)  This same argument was squarely rejected, however, in *Hassan* and *Columbia*.  In *Columbia*, for example, Judge Furman observed that, "with respect to Columbia's practice of teaching certain classes in person before the pandemic, a 'university's academic and administrative prerogatives' may not 'be impliedly limited by custom.'"  2021 WL 790638, at *4 (brackets omitted) (quoting *Gertler*, 487 N.Y.S.2d at 568); *see also Hassan*, 2021 WL 293255, at *7 ("[P]rior conduct in the educational setting does not transform over time into contractual entitlement.").  A student's breach of contract action against her university, rather, "must be grounded in a text . . . , or else courts should decline to involve themselves."  *Hassan*, 2021 WL 293255, at *7 (alteration in original) (quoting *Ford*, 2020 WL 7389155, at *4).  Here, a supposed promise based on the Parties' "prior course of conduct," (Pls.' Opp'n 11), "is not grounded in a text but rather [is] implied [by] 'custom,'

specifically the customary in-person nature of [Defendant's] undergraduate programming,"
*Hassan*, 2021 WL 293255, at \*7.  As in *Columbia* and *Hassan*, "the fact that [Defendant]
provided in-person instruction in [Plaintiff's] courses before March 2020 does not imply a
contractual entitlement to continued instruction in the same location and manner."  *Columbia*,
2021 WL 790638, at \*4; *see also Hassan*, 2021 WL 293255, at \*7 (finding the plaintiff's reliance
on "[s]uch an implied promise" unavailing); *Ford*, 2020 WL 7389155, at \*4 (concluding that "an
implied promise for on-campus education based on the nature of defendant's dealings with the
school[] [did] not withstand scrutiny").  Plaintiffs' argument to the contrary is unpersuasive.

Plaintiffs also urge the Court to follow authority from other District Courts in this Circuit.
(*See* Pls.' Opp'n 11.)  In *Ford*, Rensselaer Polytechnic Institute ("RPI") had described one of its
programs as a "time-based clustering and residential commons program" that "extends learning
across the spectrum of student residential life," and described that program in "consistently
declaratory" terms, often beginning statements with the phrase "we will."  2020 WL 7389155, at
\*1, \*4 (observing that RPI's language "ha[d] a flavor of commitment" based on its use of the
phrase "we will").  Based on these representations, the District Court for the Northern District of
New York held that the plaintiffs had adequately alleged a specific promise to provide in-person
instruction and programming.  *See id.* at \*5.  In *Bergeron v. Rochester Institute of Technology*,
No. 20-CV-6283, 2020 WL 7486682 (W.D.N.Y. Dec. 18, 2020), the Rochester Institute of
Technology ("RIT") offered both "in-person, hands-on programs" and "fully online distance
learning programs."  *Id.* at \*1.  However, RIT charged "significantly less" for the online program
than the on-campus program; marketed these different programs separately on its website and in
other publications; and treated the programs as mutually exclusive, such that students enrolled in
the online program could not enroll in on-campus classes.  *Id.*  The District Court for the Western

District of New York held that the plaintiffs had adequately pled specific contractual promises as the basis for their breach of contract claim.  *See id.* at *8.

For reasons discussed in *Hassan* and *Goldberg*, the *Ford* and *Bergeron* decisions are both distinguishable.  Here, as in *Hassan*, Plaintiffs have invoked (i) a "catalog that identifies courses offered, instructors, and the times and locations of classes," and that allows students to choose between in-person and online courses; (ii) a university policy that underscores the expectation of regular attendance; and (iii) marketing materials that promote the "on-campus experience" as a benefit of enrollment.  2021 WL 293255, at *5.  But as the court held in *Hassan*, these "statements do not rise to the level of a specific promise to provide in-person educational services" like those in *Ford* and *Bergeron*.  *Id.* at *6; *see also Goldberg*, 2021 WL 1565352, at *8 (concluding that the "statements by Pace on which [the plaintiff] relie[d] [t]here [were] more akin to those in *Hassan* than those in *Ford* and *Bergeron*").  Defendant "is not, for example, alleged to have contrasted its in-person program with its online program, made participation in the two mutually exclusive, assigned different price points to in-person and online versions of the same class or program, or to have used mandatory verbs committing to in-person teaching." *Goldberg*, 2021 WL 1565352, at *8.[5]  Thus, Plaintiffs' reliance on *Ford* and *Bergeron* is misplaced.

---

[5] The First Amended Complaint avers that "[t]he tuition and fees for in-person instruction at The New School are higher than tuition and fees for its *online certificate programs* because such costs cover not just the academic instruction, but encompass an entirely different experience."  (FAC ¶ 40 (emphasis added).)  Plaintiffs do not, however, allege that Defendant offers an online, lower-cost version of the *same program in which Plaintiff enrolled*.  (*See* Pls.' Opp'n 18 (conceding that the comparison between online and in-person programs "is not apples to apples" because Defendant does not offer an online version of every in-person program).)  *Cf. Goldberg*, 2021 WL 1565352, at *8 n.10 ("[C]ritically, [the second amended complaint ("SAC")] does not plead that Pace offers an online, lower-cost version of the Master of Fine Arts program—the program in which [the plaintiff] enrolled.  The SAC instead describes a

After the close of briefing, Plaintiffs directed the Court to a third out-of-District case from this Circuit, *Metzner v. Quinnipiac University*, —F. Supp. 3d—, 2021 WL 1146922 (D. Conn. Mar. 25, 2021).  (*See* Pls.' Not. of Suppl. Authority (Dkt. No. 33).)  In *Metzner*, the District Court for the District of Connecticut held that the plaintiffs had adequately alleged a specific promise by Quinnipiac University to provide on-campus instruction based on (1) language in Quinnipiac's 2019–20 Official Bulletin and website "tout[ing] such features as 'state-of-the-art facilities,' 'outdoor spaces,' 'classroom and immersive experiential learning,' and 'the beauty of New England'"; (2) Quinnipiac's pricing structure, which "charge[d] students significantly less for online degree programs"; and (3) the "parties' alleged course of conduct," in which the plaintiffs were "charged under, and paid, the higher of these two tuition schemes while attending in-person classes during the first half of the [s]pring 2020 semester."  2021 WL 1146922, at *10 (record citations omitted).  *Metzner* is factually distinguishable and otherwise unpersuasive.  To the extent Quinnipiac promised to furnish "state-of-the-art facilities," *id.*, the Court agrees such a statement is sufficiently specific to be actionable under a breach of contract claim, *cf. Ansari*, 1997 WL 257473, at *3.  Nothing so specific is alleged in the instant case, however.  Likewise, as noted *supra*, there is no allegation here that Defendant charged a lower rate for an online version of the same course offered in person.[6]  To the extent the *Metzner* court

---

completely different master's program offered online: the Masters in Humanities American History Emphasis Program.").

[6] The *Metzner* decision states that "Quinnipiac charged students between $515 and $575 per credit for undergraduate online degree programs, whereas students taking 12-16 credits per semester for on-campus courses were charged between $1,517.50 and $2,023.33 per credit." 2021 WL 1146922, at *3.  Although the *Metzner* opinion refers generally to "online degree programs," it does not specify whether there was a low-cost, online equivalent of the same program in which the plaintiffs were enrolled.  The Court agrees with Judge Engelmayer that that is the relevant inquiry.  *See Goldberg*, 2021 WL 1565352, at *8 & n.10.

allowed the plaintiffs' contract claim to survive based on Quinnipiac's reference to "outdoor

spaces," "classroom and immersive experiential learning," and "the beauty of New England," *see*

2021 WL 1146922, at *10, the Court finds that such language is more appropriately treated as

mere "puffery" that is "too vague to be enforced as a contract," *Columbia*, 2021 WL 790638, at

*4 (citation omitted); *see also Morales*, 2021 WL 1026165, at *1 n.1 (references in marketing

materials were non-actionable statements of "opinion or puffery").   Finally, the *Metzner* court's

reliance on the parties' prior course of conduct, *see* 2021 WL 1146922, at *10, is squarely at odds

with authority from this District, discussed *supra*, providing that a university's alleged promise

to provide in-person instruction may not be implied by custom, *see Columbia*, 2021 WL 790638,

at *4; *Hassan*, 2021 WL 293255, at *7.   Thus, *Metzner* does not salvage Plaintiffs' breach of

contract claim.[7]

---

[7] Plaintiffs' reliance on case law from outside this Circuit, (*see* Pls.' Opp'n 11), is also misplaced.   In *Salerno v. Florida Southern College*, 488 F. Supp. 3d 1211 (M.D. Fla. 2020), the District Court for the Middle District of Florida allowed a COVID-19-related breach of contract action to survive because "the [c]ollege's materials . . . touted its many resources and facilities— all of which were located on the campus thereby implying in-person participation." *Id.* at 1217. For example, the court invoked the college's "Course Portal," which provided times and locations of specific classes, as well as its "Academic Catalog," which emphasized the importance of regular class attendance. *Id.* at 1214.   For reasons already discussed, the Court concurs with the conclusions of other judges in this District that neither document should be held to give rise to a specific promise to provide exclusively in-person instruction.   The college's Academic Catalog also "highlight[ed] the [college's] on-campus facilities," describing its Roux Library as an "integral part of the intellectual life of the [c]ollege" and its "Cyber Café" as contributing "to the educational and social fabric of the campus," *id.*—paradigmatic examples of non-actionable "puffery," *cf. Columbia*, 2021 WL 790638, at *4.   The court's conclusion in *Salerno* rested in part on its observation that "this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference." *Id.* at 1218.   "It is more nebulous." *Id.*   Nebulous or not, courts in this District require plaintiffs to identify "specific promises" when bringing a breach of contract claim against their college or university. *See, e.g.*, *Columbia*, 2021 WL 790638, at *3.   Plaintiffs have not done so here.

Plaintiffs also cite *Rosado v. Barry University Inc.*, —F. Supp. 3d—, 2020 WL 6438684 (S.D. Fla. Oct. 30, 2020).   (*See* Pls.' Opp'n 11.)   There, the defendant university charged "substantially less" for online courses than it did for its on-campus program.   2020 WL 6438684, at *1.   Based on this pricing scheme, the fact that defendant had "actually provided in-person

For the foregoing reasons, the Court dismisses Plaintiffs' breach of contract claim to the extent this claim is based on Defendant's alleged promise to provide exclusively in-person classes.  Because the Courts finds that Plaintiffs have failed to "identify [a] specifically designated and discrete promise[]" to this effect, *Goldberg*, 2021 WL 1565352, at *7 (citation omitted), it need not reach Defendant's arguments regarding breach, damages, impossibility of performance, acceptance, or its reservation of rights, (*see* Def.'s Mem. 10–18).

To the extent Plaintiffs' breach of contract claim is premised on Defendant's failure to provide access to in-person "services, facilities," and other "opportunities" in exchange for mandatory student fees, (*see* FAC ¶¶ 15, 19–21, 36, 40), the claim must still be dismissed, albeit for different reasons.  The First Amended Complaint identifies only three particular fees that should allegedly be refunded: (1) a mandatory $600 "University Services Fee," which "covers a range of supportive services for students at The New School"; (2) a mandatory $8 Student Senate

---

education to [the plaintiff] until March 19, 2020," and "numerous other documents referring to in-person classes and amenities," the District Court for the Southern District of Florida held that the plaintiff's allegations were sufficient to survive a motion to dismiss.  *Id.* at *3.  Taking these considerations in order, the Court has already noted that Plaintiffs here do not allege that Defendant charged a lesser amount for an online version of the *same program* in which Amable was enrolled.  Like *Metzner*, *Rosado*'s reliance on the parties' prior course of dealing is squarely inconsistent with the approach taken in this District.  And although the *Rosado* court also relied on what it referred to as "the backdrop of numerous other documents referring to in-person classes and amenities," *id.*, it did not identify which particular statement in these documents gave rise to a specific, enforceable promise to provide exclusively in-person teaching, instead merely summarizing the plaintiff's allegations regarding these documents at the beginning of its opinion, *see id.* at *1, *3.  As with *Salerno*, therefore, the Court is unpersuaded by the reasoning in *Rosado*.

Finally, in the introduction to their Opposition brief, Plaintiffs cite no fewer than 19 cases from various state and federal courts across the country.  (*See* Pls.' Opp'n 2–3.)  Although Plaintiffs cite these cases and claim that "[n]umerous courts" have denied motions to dismiss similar breach of contract claims, Plaintiffs only discuss or apply four of these cases—*Ford*, *Bergeron*, *Rosado*, and *Salerno*—all of which are distinguishable or otherwise unpersuasive. The Court need not discuss the other 15 cases Plaintiffs cite without any extended discussion or application, particularly where there are multiple cases directly on point from this District.

Fee, which "applies to all matriculated students in all programs" and is used "to maintain and run the Student Senate and affiliated clubs and organizations"; and (3) a $55 "EPP Enrollment Fee." (*Id.* ¶¶ 19–20.)  In its opening brief in support of the instant Motion, Defendant states that while it refunded pro rata portions of fees that students paid for their dining plans or residence hall accommodations, it "properly retained" the three fees identified by Plaintiffs, as these fees "were related to services that were unaffected by the switch to virtual learning."  (Def.'s Mem. 15.) Defendant explains, for example, that the University Services Fee "covers the costs of various student conveniences, such as lifetime access to e-transcripts and e-diplomas and replacement ID cards."  (*Id.*)  The Student Senate Fee supports "various initiatives by the student senate," and the EPP Enrollment Fee is charged to students who enter a deferred tuition payment plan and is used to cover the costs of "managing and processing the payment plan."  (*Id.* at 15–16.)  Defendant reiterates that "none of these items were [sic] affected in any manner by the closure of [Defendant's] campus," and thus, "the university properly retained them."  (*Id.* at 16.)  In their Opposition, Plaintiffs do not respond to these arguments or otherwise address the University Services Fee, the Student Senate Fee, or the EPP Enrollment Fee.  (*See generally* Pls.' Opp'n.) Accordingly, any claim based on the payment of these fees has been abandoned.  *See Jackson v. Fed. Express*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Bucek v. Gallagher Bassett Servs., Inc.*, No. 16-CV-1344, 2018 WL 1609334, at *14 n.25 (S.D.N.Y. Mar. 29, 2018) (deeming claims abandoned where the plaintiff failed to respond to the defendant's arguments in her opposition); *Harris v. City of Newburgh*, No. 16-CV-2731, 2017 WL 4334141, at *10 n.7 (S.D.N.Y. Sept. 27, 2017) (same); *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010)

("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in [her] opposition papers defendants' arguments for dismissing such a claim."); *Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This [c]ourt may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

Accordingly, Plaintiffs' breach of contract claim is dismissed.

### 3. Unjust Enrichment

Plaintiffs bring an unjust enrichment claim in the alternative to their contract claim. (*See* FAC ¶¶ 64–70.) They allege that Defendant has retained tuition and fees for the spring 2020 semester despite failing to provide "the education, experience, and services for which the tuition and fees were collected, making [its] retention unjust under the circumstances." (*Id.* ¶ 68.)

"The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). Unjust enrichment "lies as a quasi-contract claim" that "contemplates 'an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties.'" *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (citation omitted). The claim is available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1186 (N.Y. 2012). Notably, "[u]nder New York law, a plaintiff may not recover under quasi-contract claims such as unjust enrichment where an enforceable contract governs the same subject matter." *Goldberg*, 2021 WL 1565352, at *11; *see*

*also Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020) (gathering authorities for the proposition that "where the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the claimant cannot plead unjust enrichment in the alternative under New York law").  Moreover, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *Id.*

Here, Plaintiffs argue that they may plead unjust enrichment in the alternative to their breach of contract claim.  (*See* Pls.' Opp'n 22.)  But as Judge Furman explained in *Columbia*, "the New York Court of Appeals has made clear that 'unjust enrichment is not a catchall cause of action to be used when others fail.'"  2021 WL 790638, at *9 (quoting *Corsello*, 967 N.E.2d at 1185).  "[C]ourts in this District have previously dismissed unjust enrichment claims that were indistinguishable from contract claims pleaded in the alternative in the same complaint, at least where the parties did not dispute that they shared a contractual relationship."  *Id.* (gathering cases).  Here, Plaintiffs' "unjust-enrichment claim aims to recover the same payments (tuition and fees) as [their] contract-breach claim and is based on the same allegedly breaching conduct." *Goldberg*, 2021 WL 1565352, at *12; *see also Columbia*, 2021 WL 790638, at *9 (noting that the plaintiffs' "unjust enrichment claims [were] easily dismissed, as the claims rest[ed] on the same factual allegations as their contract claims").  Likewise, the Parties do not dispute that they shared a contractual relationship, for as the Court discussed *supra*, there is an implied contract between a student and her college or university.  *See Goldberg*, 2021 WL 1565352, at *7, *12; *see also Papelino*, 633 F.3d at 93; *Columbia*, 2021 WL 790638, at *2.[8]  Because the Parties do

---

[8] Though the Parties dispute the scope of the contractual relationship, and whether it encompassed certain promises and obligations, they do not contest the existence of the contractual relationship itself.

"not dispute that they shared a contractual relationship" and because Plaintiffs' unjust enrichment claim is "indistinguishable from [their] contract claim[]," the Court dismisses the unjust enrichment claim. *See Columbia*, 2021 WL 790638, at *9; *see also Goldberg*, 2021 WL 1565352, at *12 (holding that the plaintiff "may not recover in quasi-contract for [the university's] asserted breach" because (1) there was an implied contract between the plaintiff and the university, and (2) the plaintiff's unjust-enrichment claim was duplicative of his contract-breach claim); *Zagoria*, 2021 WL 1026511, at *5 (dismissing unjust enrichment claim that was based on "the same factual allegations underpinning [the] [p]laintiff's claim for breach of contract [where the] [p]laintiff offer[ed] no explanation as to how his unjust enrichment claim differ[ed] from his contract claim").

### 4.  Money Had and Received

Finally, Plaintiffs have also brought a claim for money had and received.  (FAC ¶¶ 79–85; *see also* Pls.' Opp'n 24–25.)  Like unjust enrichment, a cause of action for money had and received "is one of quasi-contract." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 292 (S.D.N.Y. 2019) (quoting *Melcher v. Apollo Med. Fund Mgmt. L.L.C.*, 959 N.Y.S.2d 133, 142 (App. Div. 2013)); *see also Dessert Beauty, Inc. v. Platinum Funding Corp.*, 519 F. Supp. 2d 410, 420 (S.D.N.Y. 2007) (same).  Money had and received has been described as "an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience [the party] ought not to retain and that belongs to another." *Kavitz v. Int'l Bus. Machs. Corp.*, No. 09-CV-5710, 2010 WL 11507447, at *10 (S.D.N.Y. Aug. 27, 2010) (citation omitted).  Under New York law, "an action for money had and received lies when (1) defendant received money belonging to plaintiff; and (2) defendant benefitted from the receipt of money; and (3) under principles of equity and good conscience, defendant should not be

29

permitted to keep the money." *Johnson v. JPMorgan Chase Bank, N.A.*, 488 F. Supp. 3d 144, 160 (S.D.N.Y. 2020) (citation omitted).  Courts have characterized this cause of action as "essentially identical to a claim of unjust enrichment."  *Id.* (quoting *Belda v. Doerfler*, No. 14-CV-941, 2015 WL 5737320, at *4 n.4 (S.D.N.Y. Sept. 30, 2015) (gathering cases)); *see also Hassan*, 2021 WL 293255, at *12 (same); *Fischer v. Graham*, No. 15-CV-6414, 2016 WL 3181157, at *4 n.3 (S.D.N.Y. June 3, 2016) (same).

As with unjust enrichment, "[h]owever, where a valid contract exists between the parties regarding the issue at dispute, a quasi-contractual theory, such as money had and received, cannot be maintained."  *Dessert Beauty*, 519 F. Supp. 2d at 420; *see also Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933, 940 (2d Cir. 1998) (affirming district court's dismissal of claim for money had and received "on the basis that quasi contract does not lie where, as here, there is a valid contract between the parties respecting the matter at issue"); *Stanley*, 466 F. Supp. 3d at 430 ("As a general rule, the existence of a valid contract renders unjust enrichment and money had and received unavailable as a remedy."); *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 205 (S.D.N.Y. 2011) ("[A]n action for 'money had and received' does not lie where there is a valid contract between the parties respecting the matter at issue.").  Where, as here, the parties are in a contractual relationship and the plaintiff's claim for money had and received "merely duplicates [a] defective breach of contract claim," courts will dismiss the claim for money had and received.  *See Kavitz*, 2010 WL 11507447, at *10 ("Here, [p]laintiff's claim for money had and received merely duplicates his breach of contract claim, and so is not actionable."); *see also Zagoria*, 2021 WL 1026511, at *5, *6 (dismissing the plaintiff's claim for money had and received because it was "duplicative of [his] breach of contract claim" and the plaintiff's "relationship with [the

university] [was] contractual in nature"); *Music Royalty Consulting, Inc. v. Reservoir Media Mgmt., Inc.*, No. 18-CV-9480, 2019 WL 1950137, at *9 (S.D.N.Y. Apr. 17, 2019) (dismissing a claim for money had and received that was "duplicative of [the plaintiff's] breach of contract claims" where the parties' relationship was governed by "a valid and enforceable contract"); *Ellington Credit*, 837 F. Supp. 2d at 205 (dismissing a "duplicative" claim for money had and received where there was "a valid contract between the parties respecting the matter at issue" (citation omitted)).

Accordingly, for the same reasons the Court is dismissing Plaintiffs' unjust enrichment claim, it also dismisses their claim for money had and received.

### III.  Conclusion

For the reasons stated above, Defendant's Motion is granted.

Because this is the first adjudication of Plaintiffs' claims on the merits, the First Amended Complaint is dismissed without prejudice.  To the extent Plaintiffs have a good faith basis for filing a second amended complaint, they must do so within 30 days of the date of this Opinion & Order.  Failure to properly and timely amend will result in dismissal of the First Amended Complaint with prejudice.  The Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 23).

SO ORDERED.

Dated:   July 27, 2021
         White Plains, New York

_____
          KENNETH M. KARAS
          United States District Judge