UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH AMABLE and KAITLYN
AMABLE, *individually and on behalf of all
others similarly situated*,

                              Plaintiff,

    v.

THE NEW SCHOOL,

                              Defendant.

No. 20-CV-3811 (KMK)

OPINION & ORDER

---

<u>Appearances:</u>

Alec M. Leslie, Esq.
Philip L. Fraietta, Esq.
Bursor & Fisher, P.A.
New York, NY
*Counsel for Plaintiffs*

Sarah Westcot, Esq.
Bursor & Fisher, P.A.
Miami, FL
*Counsel for Plaintiffs*

Jonathan M. Kozak, Esq.
Isaac J. Burker, Esq.
Susan Deegan Friedfel, Esq.
Jackson Lewis P.C.
White Plains, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

    Elizabeth Amable ("Elizabeth") and Kaitlyn Amable ("Kaitlyn"; collectively,

"Plaintiffs") bring this putative class action against The New School ("Defendant"), alleging that

Defendant's transition to online classes amid the Covid-19 pandemic deprived students and

parents of students of the educational experience for which they bargained, giving rise to breach

of contract and unjust enrichment claims.  (*See generally* Second Am. Compl. ("SAC") (Dkt. No. 37).)  Before the Court is Defendant's Motion to Dismiss the SAC (the "Motion").  (*See* Not. of Mot. (Dkt. No. 44).)  For the following reasons, Defendant's Motion is granted.

## I.  Background

### A.  Factual Background

Unless otherwise stated, the following facts are drawn from Plaintiffs' SAC and are assumed true for the purpose of resolving the instant Motion.  *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

#### 1.  The Parties and Injuries

Defendant "is a private research university" centered in New York.  (SAC ¶ 39.) Elizabeth was "the parent of an undergraduate student at [Defendant] . . . pursuing a Bachelor of Fine Arts in Communication Design" who, on her daughter's behalf, "paid approximately $11,000 in tuition and fees to Defendant for the Spring 2020 semester."  (*Id.* ¶ 34.)  Kaitlyn, an undergraduate student attending Defendant during the Spring 2020 semester pursuing a Bachelor of Fine Arts in Communication Design, "paid approximately $4,000 in tuition and fees to Defendant for the Spring 2020 semester."  (*Id.* ¶ 35.)

In order for Kaitlyn to enroll in the Spring 2020 Semester, Plaintiffs were responsible for the following fees for the Spring 2020 semester: $55.00 EPP Enrollment Fee; $600.00 University

2

Services Fee; and $8.00 Student Senate Fee.  (*Id.* ¶ 47.)[1, 2]  Plaintiffs allege that the University

Services Fee "covers a range of supportive services for students at The New School."  (*Id.* ¶ 48

(quotation marks omitted).)[3]  Having paid these fees, Kaitlyn was able to participate in

Defendant's Spring 2020 Semester, which began on January 21, 2020 and which proceeded

without incident for the next eight weeks; however, the Covid-19 pandemic brought normal

university operations to an abrupt halt in March, as Defendant announced that all classes would

only be conducted online for the remainder of the Spring 2020 semester.  (*Id.* ¶¶ 20, 23, 25.)

### 2.  Contractual Promises

Plaintiffs allege that they "entered into a contractual agreement" with Defendant "for

specific services," namely "an on-campus, in-person education."  (*Id.* ¶ 3.)  Specifically,

Plaintiffs aver that in exchange for payment "in the form of tuition and fees," Defendant "was to

provide in-person educational services, experiences, opportunities, and other related services."

(*Id.*)  Plaintiffs assert that the terms of the contract were "set forth in publications from

[Defendant]," including: (1) Defendant's Spring Semester 2020 Course Catalog ("Course

---

[1] Though the Complaint does not explicitly state whether a relationship exists between Elizabeth and Kaitlyn, based on Plaintiffs' opposition briefing, Plaintiffs' shared last names, and the overlapping facts regarding Elizabeth's daughter's course of study and Kaitlyn's course of study, the Court presumes that Elizabeth is Kaitlyn's mother for purposes of this Opinion.

[2] Neither the SAC nor additional documents define the term "EPP."  Ultimately, however, this has no bearing on the Court's holding.

[3] According to Plaintiffs, Defendant reduced this fee to $225.00 "for the 2020-2021 Academic Year, during which all Fall 2020 classes were held online, and increased the same fee back up to $600 for the 2021-22 Academic Year after resuming in-person instruction."  (*Id.* ¶ 49 (footnote omitted).)  Plaintiffs also allege that the reduction in fees "indicates that [Defendant's] 'supportive services' available to students as part of the fee were limited as a result of the switch to remove learning."  (*Id.* ¶ 50.)

Catalog"), (*id.*); (2) Defendant's "Attendance Statement," (*id.* ¶ 18); (3) Kaitlyn's Course

schedule, (*id.* ¶ 37); and (4) "The New School's webpage," (*id.* ¶ 3).

First, Plaintiffs allege that Defendant's Spring 2020 Course Catalog articulated particular

information about courses to be offered by Defendant, including "the instructor, the days and

times during which the courses would be held, and the location (including the building and room

number)." (*Id.* ¶ 5.)  To that end, Plaintiffs aver that university students like Kaitlyn chose

courses specifically based on the information provided in the Course Catalog, including if they

were based in "New York City," "Paris," or "Online." (*Id.* ¶¶ 6, 7.)

Second, Plaintiffs aver that Defendant's "Attendance Statement" emphasizes the

importance of regular class attendance and participation. (*Id.* ¶ 18.)  Plaintiffs allege that the

Statement informs students "that '[r]egular attendance and class participation are important

factors in student learning,' and faculty are 'expected to articulate this idea,' as well as 'monitor

student progress and attendance regularly.'" (*Id.* (alteration in original).)

Third, Plaintiffs allege that Kaitlyn's Semester Course schedule makes clear that "the

classes in which she enrolled were to be taught *in-person* at [Defendant's] New York City

Campus." (*Id.* ¶ 37) (emphasis added).

Fourth, and finally, Plaintiffs allege that Defendant's online marketing, and specifically

Defendant's "Campus Life" page, "promoted the value provided by its on-campus experience

and related on-campus services . . . ." (*Id.* ¶ 8; *see also id.* ¶¶ 8–15.)  Plaintiffs allege that the

"Campus Life" page on Defendant's website states that Defendant's Innovation Center "is 'open

to New School students and faculty 24 hours a day,'" (*id.* ¶ 9), "further emphasizes the updated

facilities and materials available to students, including 'a series of extensive labs and information

technology services,'" (*id.* ¶ 10), "advertises its various university performance facilities," such

4

as recording studios, to be available in-person to students, (*id.* ¶¶ 13, 14), and "advertises to students that they will have access to the 'University Learning Center' where students can utilize specialized one-on-one or group tutoring sessions at the center," (*id.* ¶ 15).

Plaintiffs allege more broadly that "[t]he Communication Design program [with which Kaitlyn is affiliated] at The New School relies extensively on in-person instruction, peer collaboration, and access to The New School's facilities." (*Id.* ¶ 35.)

Given the promises that Plaintiffs contend are implicit within these four fields of publication, Plaintiffs allege that by shifting its instruction to an online format, "Defendant [did] not deliver[] the educational services, facilities, access and/or opportunities that Plaintiffs and the putative class contracted and paid for," because none of the facilities or services was available to students during the suspension of in-person learning. (*Id.* ¶ 26; *see also id.* at ¶¶ 17, 63.) Plaintiffs further allege that they have not been provided a refund of any tuition monies or fees paid for the Spring 2020 semester, despite the shift to online learning, as Defendant has only "provided refunds 'on a pro-rated basis for residential students leaving campus and those students who are on university meal plans.'" (*Id.* ¶ 28 n.5; *see also id.* ¶¶ 28–30.)

Accordingly, Plaintiffs bring claims for breach of contract and unjust enrichment. (*See id.* ¶¶ 73–93.) Plaintiffs seek "disgorgement of the pro-rated portion of tuition and fees . . . proportionate to the amount of time that remained in the Spring Semester 2020 when classes moved online and campus services ceased being provided." (*Id.* ¶ 63.) Plaintiffs also seek an order certifying a class and subclass under Rule 23 of the Federal Rules of Civil Procedure, compensatory and punitive damages, prejudgment interest, an order of restitution "and all other forms of equitable monetary relief," any injunctive relief deemed proper, and an order awarding reasonable attorneys' fees to the putative class counsel. (*See id.* Prayer for Relief.)

B.  Procedural History

Plaintiffs filed their initial complaint on May 15, 2020, on behalf of themselves and all people who paid tuition and fees for the Spring 2020 semester at the New School.  (Dkt. No. 1.) On July 29, 2020, Defendant filed a letter seeking leave to file a motion to dismiss Plaintiff's Complaint.  (Dkt. No. 7.)  In response, on August 5, 2020, Plaintiffs filed a letter requesting permission to file an amended complaint, (Dkt. No. 12), which the Court granted the same day, (Dkt. No. 13).  Plaintiffs' First Amended Complaint was thereafter filed on September 2, 2020. (Dkt. No. 14.)  Defendant subsequently filed a Motion To Dismiss Plaintiff's First Amended Complaint and supporting papers on November 20, 2020.  (Dkt. Nos. 23–26.)  Plaintiffs filed their opposition papers on December 23, 2020.  (Dkt. Nos. 27–28.)  Defendant filed its Reply on January 7, 2021, (Dkt. No. 31).  On July 27, 2021, the Court granted Defendant's Motion To Dismiss without prejudice.  (Op. ("2021 Op.") (Dkt. No. 36).)

On August 26, 2021, Plaintiffs filed their SAC.  (Dkt. No. 37.)  Defendant sought leave to file the instant Motion on September 9, 2021.  (Dkt. No. 38.)  Following a pre-motion telephone conference on October 19, 2021, (*see* Dkt. (minute entry for Oct. 19, 2021)), the Court adopted a briefing schedule for the instant Motion, (Dkt. No. 43).  Pursuant to this schedule, Defendant filed the instant Motion and supporting papers on November 18, 2021.  (*See* Not. of Mot.; Aff'n of Jonathan M. Kozak ("Kozak Aff'n") (Dkt. No. 45); Decl. of Rebecca Hunter (Dkt. No. 46); Def.'s Mem. of Law in Supp. of Mot. ("Def.'s Mem.") (Dkt. No. 47).)  After a modification to the briefing schedule was made, (*see* Dkt. No. 48), Plaintiffs timely filed their Opposition on December 20, 2021, (Pls.' Mem. of Law in Opp. to Mot. ("Pls.' Mem.") (Dkt. No. 49)).  Finally, Defendant filed a Reply on January 19, 2022.  (Def.'s Reply Mem. of Law in Supp. of Mot. ("Def.'s Reply Mem.") (Dkt. No. 50).)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration and quotation marks omitted).  Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  Analysis

Defendant premises its Motion on two chief arguments: (1) that Elizabeth, as a parent of a university student not in privity of contract with the university itself, has no standing to sue, and (2) that Plaintiffs fail to state a claim for either breach of contract or unjust enrichment. (*See generally* Def.'s Mem; Def.'s Reply Mem.)[4] The Court evaluates each separately.

---

[4] Defendant also maintains its argument that Plaintiffs claims are barred by the educational malpractice doctrine, but avoids expounding upon it "in light of this Court's prior opinion" rejecting such an argument. (Def.'s Mem. 4 n.3; *see also* 2021 Op. 7–10.) "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir. 1964). In its prior opinion, the Court diligently analyzed its reasoning and concluded that the educational malpractice doctrine did not apply to this Action. (*See* 2021 Op. 7–10.) The limited new allegations Plaintiff raises, *see infra* Section II.B.2.c, do not bear on this question or the Court's prior analysis. Accordingly, the Court remains of the opinion that the doctrine does not apply in this Action. (*See* 2021 Op. 7–10.)

1.  Elizabeth's Standing

Defendant argues that Elizabeth, as the parent of a student and not in contractual privity with Defendant, lacks standing to enforce the terms of an agreement insofar as she is a third-party beneficiary.  (Def.'s Mem. 8–9; *see also* Def.'s Reply Mem. 2–3.)  Plaintiffs argue otherwise, stating that Elizabeth's monetary injury—that she did not get what was bargained for—gives rise to standing.  (*See* Pls.' Mem. 2–5.)

Standing asks "whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  *Warth v. Seldin*, 422 U.S. 490, 498 (1975).  "Under New York law, unless a party has contractual privity or is a third-party beneficiary of a contract, it lacks standing to enforce the terms of the agreement."  *Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC*, No. 06-CV-1510, 2006 WL 2331009, at *6 (S.D.N.Y. Aug. 11, 2006) (footnote omitted) (collecting cases).  Moreover, "[a]lthough a third party need not be specifically mentioned in the contact before third-party beneficiary status is found, New York law requires that the parties' intent to benefit a third party must be shown on the face of the agreement."  *Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir. 1996) (quoting *In re Gulf Oil/Cities Serv. Tender Offer Litig.*, 725 F. Supp. 712, 733 (S.D.N.Y. 1989)); *see also Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 399 F.2d 289, 292 (2d Cir. 1968) ("The agreement under which the third party claims must clearly express an intention to assume a direct duty to him.  It is essential not merely that the contract shall operate for the benefit of the third person, but that it shall have been so intended." (quoting 10 N.Y. Juris, Contracts § 239, 162)); *Brown v. AXA RE*, No. 02-CV-10138, 2004 WL 941959, at *4 (S.D.N.Y. May 3, 2004) ("[T]he case law makes it clear that under New York law, the parties' intent to benefit the third party must be evident on the face of the contract for that third party to be considered an 'intended beneficiary.'");

*Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 459 (N.Y 2018) ("[A] third party may

sue as a beneficiary on a contract made for [its] benefit.  However, an intent to benefit the third

party must be shown and, absent such intent, the third party is merely an incidental beneficiary

with no right to enforce the particular contracts." (alterations in original) (quoting *Port Chester

Elec. Const. Co. v. Atlas*, 357 N.E.2d 983, 986 (N.Y. 1976)).

The New York Court of Appeals has instructed that finding such an intent "generally

require[s] express contractual language stating that the contracting parties intended to benefit a

third party. . . ." *Id.* at 460.  "In the absence of express language, 'such parties are generally

considered mere incidental beneficiaries.'" *Id.* (quoting *Port Chester*, 357 N.E.2d at 986); *see

also In re Gulf Oil*, 725 F. Supp. at 733 ("Absent such intent, the third party is merely an

incidental beneficiary with no right to enforce the contract.").  In this Action, to the extent a

contract exists, Elizabeth is such an incidental beneficiary.

Throughout the entirety of the SAC, Elizabeth is mentioned only three times: the case

caption, the introduction, and one paragraph explaining her identity.  (*See generally* SAC.)  In

other words, at no point do Plaintiffs allege that Elizabeth is in privity of contract with Defendant

or that she is an expressly intended third party beneficiary.  (*See* Def.'s Mem. 9.)  Rather,

Elizabeth's injury is not tied to Defendant, but rather "traceable to the arrangement between

[mother] and daughter." *Romankow v. N.Y. Univ.*, No. 20-CV-4616, 2021 WL 1565616, at *3

(S.D.N.Y. Apr. 21, 2021).  Accordingly, Plaintiffs cannot establish Elizabeth's standing to bring

this Action.

Plaintiffs nonetheless attempt to argue around this reality by citing inapposite New York

caselaw.  For example, Plaintiffs point to *Uddin v. New York Univ.*, wherein a parent brought "a

viable breach of contract claim" against a university on behalf of his son upon the university's

removal of the plaintiff's son, 6 N.Y.S.3d 900, 901 (N.Y. App. Term. 2014).  (*See* Pls.' Mem. 3.)

However, this lone case is inapposite, as the opinion does not reference, let alone determine, the

parent plaintiff's standing.  *See generally Uddin*, 6 N.Y.S.3d 900.  Thus, it cannot provide a

foothold for Plaintiffs in this Action, particularly amidst the overwhelming precedent to the

contrary.  *See supra*.

In another example, Plaintiffs point to *Ericson v. Syracuse Univ.*, where parents and

students alike sued a university following the students' sexual harassment, *see* 35 F. Supp. 2d

326, 327–28 (S.D.N.Y. 1999).  (*See* Pls.' Mem. 4.)  Once again, this case cannot carry Plaintiffs'

water.  The plaintiffs in *Ericson* raised no claims sounding in contract; rather, they sought to

assert claims under Title IX, the Violence Against Women Act, 42 U.S.C. § 1985, and the state

law tort of intentional infliction of emotional distress, *Ericson*, 35 F. Supp. 2d at 327–28, 330.

Moreover, the *Ericson* court never considered standing questions.  Thus, even assuming that the

court would have held that the parent plaintiffs had standing to sue, that holding would be wholly

irrelevant where it did not pertain to contract law.

Plaintiffs' final attempt to establish Elizabeth's standing to bring these claims is a set of

citations to out-of-state cases.  But "where, as here, [] [P]laintiff's 'state law cause of action is

structured as a run-of-the-mill state law contract claim, governed by state law standards and

analyzed using the familiar elements applied in a New York breach of contract action.'"

*CWCapital Cobalt VR Ltd. v. CWCapital Invs. LLC*, No. 17-CV-9463, 2018 WL 2731270, at *7

(S.D.N.Y. May 23, 2018) (quoting *Liana Carrier Ltd. v. Pure Biofuels Corp.*, 672 F. App'x 85,

92 (2d Cir. 2016)).  Thus, out-of-state precedent, which is already non-binding, is even less

persuasive.  *Cf. Doe v. Emory Univ.*, No. 20-CV-2002, 2021 WL 358391, at *3 (N.D. Ga. Jan.

22, 2021) (refusing to consider cases cited by plaintiffs "from other jurisdictions" in analogous

state law claims regarding university closure following the onset of the Covid-19 pandemic). The same is true with respect to Plaintiffs' unjust enrichment claims. *Cf. In re Grand Theft Auto Video Game Consumer Litig.*, 251 F.R.D. 139, 147 (S.D.N.Y. 2008) (collecting cases that show that "several courts have determined that the states' unjust-enrichment laws vary in relevant respects"). Therefore, Plaintiffs' citations to inapposite jurisprudence—both within and without the Second Circuit—hold little if any persuasive value. The Court will accordingly join the chorus of courts in New York, the Second Circuit, and elsewhere in holding that parents asserting state law claims of breach of contract and unjust enrichment lack standing in the absence of contractual provisions establishing that they are intended beneficiaries. *See Rynasko v. New York Univ.*, No. 20-CV-3250, 2021 WL 1565614, at *3 (S.D.N.Y. Apr. 21, 2021) (granting a motion to dismiss claims brought by parents of university students sounding in state law breach of contract and unjust enrichment because the parent "does not plausibly allege that [his or] her [child] is a minor child or that [he or she] was an intended third-party beneficiary of the contract between" the child and the defendant university); *Meissner v. Syracuse Univ.*, No. 20-CV-839, 2021 WL 1536676, at *3–4 (N.D.N.Y. Apr. 13, 2021) (dismissing similar claims for the same reason); *Metzner v. Quinnipiac Univ.*, 528 F. Supp. 3d 15, 24–26 (D. Conn. Mar. 25, 2021) (same); *Espejo v. Cornell Univ.*, 523 F. Supp. 3d 228, 236 (N.D.N.Y. 2021) (same); *Gociman v. Loyola Univ. of Chi.*, 515 F. Supp. 3d 861, 86 (N.D. Ill. Jan. 25, 2021) (same); *Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283, 2020 WL 7486682, *3–4 (W.D.N.Y. Dec. 18, 2020) (same); *Lindner v. Occidental Coll.*, No. 20-CV-8481, 2020 WL 7350212, *5–6 (C.D. Cal. Dec. 11, 2020) (same); *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1215–17 (M.D. Fla. 2020) (same).

2.  Failure to State a Claim for Breach of Contract

a.  Applicable Law

"In a breach of contract case, a plaintiff must plead '(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that defendant's breach.'" *Thales Alenia Space France v. Thermo Funding Co., LLC*, 959 F. Supp. 2d 459, 464 (S.D.N.Y. 2013) (quoting *Diesel Props S.r.l. v. Greystone Bus. Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011)).  As occurred in the Court's prior round of briefing, Defendant argues that Plaintiffs have not identified a specific promise in which it agreed to provide exclusively in-person instruction, and that, even if there were such a promise, Plaintiffs cannot adequately plead the breach or damages elements of their contract claim.  (*See* Def.'s Mem. 10– 18.)[5]

"Under New York law, there exists an implied contract between a student and their college or university." *Goldberg v. Pace Univ.*, 535 F. Supp. 3d 180, 193 (S.D.N.Y. 2021); *see also Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011) ("Under New York law, an implied contract is formed when a university accepts a student for enrollment . . . .").  The "essence" of this implied contract is that the academic institution "must act in good faith in its dealings with its students," *Olsson v. Bd. of Higher Educ.*, 402 N.E.2d 1150, 1153 (N.Y. 1980); *see also Goldberg*, 535 F. Supp. 3d at 193 (same), and "[t]he terms of th[is] implied contract are contained in the university's bulletins, circulars[,] and regulations made available to the student," *Papelino*, 633 F.3d at 93 (citation and internal quotation marks

---

[5] Defendant also argues that Plaintiffs' breach of contract claim must also be dismissed as a result of impossibility of performance, (Def.'s Mem. 19–20), and due to the doctrine of acceptance, (*id.* at 20–21).  Because the Court rules on Defendant's primary arguments related to contractual promise and damages, the Court need not—and does not—opine on these arguments.

omitted). "The interpretation of a university's catalogue, like the interpretation of any contract, is a matter of law for the Court." *In re Columbia Tuition Refund Action*, 523 F. Supp. 3d 414, 421 (S.D.N.Y. 2021) (citation omitted).

Thus, to state a claim for breach of this implied contract, "a student must identify specific language in the school's bulletins, circulars, catalogues[,] and handbooks which establishes the particular 'contractual' right or obligation alleged by the student." *Id.* (citation omitted); *see also Goldberg*, 535 F. Supp. 3d at 193 (observing that the student "must identify specifically designated and discrete promises" (citation and internal quotation marks omitted)). Stated differently, the student "must point to a provision that guarantees 'certain specified services,'" *In re Columbia*, 523 F. Supp. 3d at 421 (quoting *Baldridge v. State*, 740 N.Y.S.2d 723, 725 (App. Div. 2002)), as opposed to a "general statement of policy," *id.* (brackets and citation omitted), "or to statements of 'opinion or puffery,'" *id.* (quoting *Bader v. Siegel*, 657 N.Y.S.2d 28, 29 (App. Div. 1997)). The Court's role, consequently, "is circumscribed to enforcing specific promises." *Goldberg*, 535 F. Supp. 3d at 193 (quoting *Ford v. Rensselaer Polytechnic Inst.*, 507 F. Supp. 3d 406, 414 (N.D.N.Y. Dec. 16, 2020)). "General policy statements and broad and unspecified procedures and guidelines will not suffice." *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 370 (S.D.N.Y. 2016) (citation and internal quotation marks omitted); *see also, e.g.*, *Chira v. Columbia Univ. in N.Y.C.*, 289 F. Supp. 2d 477, 485–86 (S.D.N.Y. 2003) (dismissing breach of contract claim where the plaintiff could not "point[] to [a] document or conversation that [gave] rise to a promise which [the institution] breached"); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 207 (S.D.N.Y. 1998) (noting that "the mere allegation of mistreatment without the identification of a specific breached promise or obligation does not state a claim on which relief can be granted").

14

b.  Law of the Case Doctrine: Course Catalog, Kaitlyn's Schedule, and the
Attendance Policy

As was the case with Plaintiffs' FAC, Plaintiffs attempt to divine a specific promise from

a collection of documents Defendant published, including Defendant's Course Catalog (SAC ¶¶

3, 5–7, 36, 75–78, 81), Kaitlyn's Course Schedule (*id.* ¶ 37), and Defendant's Attendance

Statement, (*id.* ¶¶ 18, 79), as well as promotional materials Defendant posted on its website, (*id.*

¶¶ 8–11, 13–16, 61, 76).

In its prior opinion, the Court addressed the promises allegedly made via the Course

Catalog, the Course Schedule, the Attendance Statement, and certain promotional statements.

(*See* 2021 Op. 13–25.)  Plaintiffs' Second Amended Complaint is nearly identical to the First

Amended Complaint with respect to the allegations regarding the first three cornerstones of

Plaintiffs' theory of Defendant's promise.  (*Compare* First Am. Compl. ("FAC") (Dkt. No. 14)

¶¶ 1–2, 4–6, *with* SAC ¶¶ 1–2, 4–6 (stating identical background information regarding the

context of the suit and Kaitlyn's Course Catalog, including identical screenshots); *compare* FAC

¶ 7, *with* SAC ¶ 18 (stating identical allegations regarding Defendant's "Policies and Procedures

including the Attendance Statement"); *compare* FAC ¶¶ 8–11, 12–15, 28–33, 34–38, 40–41, *with*

SAC ¶¶ 20, 22–23, 25–28, 32, 43–46, 54–56, 61–63 (stating identical allegations regarding the

timing of semester and Defendant's announcements and cancellation of classes in light of the

Covid-19 pandemic); *compare* FAC ¶¶ 17–24, *with* SAC ¶¶ 34–39, 49, 51 (stating identical

allegations regarding the parties identities and fees paid); *compare* FAC ¶¶ 25–27, *with* SAC ¶¶

40–42 (stating nearly identical claims to jurisdiction and venue); *compare* FAC ¶¶ 42–50, *with*

SAC ¶¶ 64–72 (stating identical class allegations); *compare* FAC ¶¶ 51–63, *with* SAC ¶¶ 73–86

(stating identical allegations for Count I, breach of contract, save for SAC ¶ 79, which repeats

SAC ¶ 18, which itself duplicates FAC ¶ 7); *compare* FAC ¶¶ 64–70, *with* SAC ¶¶ 87–93 (stating identical allegations for Count II, unjust enrichment).

Conversely, the new substantive allegations Plaintiffs raise only speak to the fees paid, (*see* SAC ¶¶ 47–50), an allegation of Defendant's bad faith, (*id.* ¶ 29), and more detailed information regarding statements from Defendant's website which purportedly speak to Defendant's promises of in-person education, (*id.* ¶¶ 7–17).[6]   Finally, Plaintiffs removed allegations that spoke to the educational malpractice argument already decided by the Court from the SAC, (*see* FAC ¶ 39; *see also* 2021 Op. 8), as well as claims of conversion and money had and received, (*see* FAC ¶¶ 71–78, 79–85).

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case." *Az. Premium Fin. Co. v. Employers Ins. of Wausau, of Wausau Am Mut. Co.*, 586 F. App'x. 713, 716 (2d Cir. 2014) (summary order) (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983)).   To prevent the parties from re-litigating previously decided issues, the doctrine "counsels a court against revisiting its prior rulings in subsequent stages of the same case absent 'cogent' and 'compelling' reasons such as an 'intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 736 F.3d 198, 208 (2d Cir. 2013) (quoting *Ali v. Mukasey*, 529 F.3d 478, 490 (2d Cir. 2008)).   A court should therefore be "'loathe' to revisit an earlier decision 'in the absence of extraordinary circumstances . . . .'" *N. River Ins. Co. v. Philadelphia*

---

[6] There are also some smaller, non-substantive additions in the SAC that do not bear directly on the Action, such as the claim that "[t]here are hundreds, if not thousands, of institutions of higher learning in this country.  Each institution markets and offers different and competing educational products."  (SAC ¶ 57.)

*Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (quoting *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 817 (1988)); *see also Prisco v. A & D Carting Corp.*, 168 F.3d 593, 607 (2d Cir. 1999) ("[T]he decision whether or not to apply law-of-the-case is . . . informed principally by the concern that disregard of an earlier ruling not be allowed to prejudice the party seeking the benefit of the doctrine." (citations omitted) (alterations in original)).  "Although prudential and discretionary, the doctrine may be raised by a court sua sponte."  *LPD New York, LLC. v. Adidas Am., Inc.*, No. 15-CV-6360, 2019 WL 1433055, at *8 (E.D.N.Y. Mar. 29, 2019); *see also United States v. Lacouture*, 721 F. App'x. 1, 4 (1st Cir. 2018) (citing *United States v. Wallace*, 573 F.3d 82, 90 n.6 (1st Cir. 2009)); *United States v. Anderson*, 772 F.3d 662, 669 (11th Cir. 2014); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551, 2012 WL 1890242, at *4 (E.D.N.Y. May 23, 2012).

     With respect to Plaintiffs' argument that a promise can be found in language in the Course Catalog, Kaitlyn's Course Schedule, or the Attendance Policy, "[t]he Court previously addressed Plaintiff[s'] argument that [their] allegations in the Complaint are sufficient to show that a contract existed between the parties [on these bases] and declines to do so again."  *LPD*, 2019 WL 1433055, at *8.  Regarding these three hallmarks of Plaintiffs' complaint, "[t]he SAC does not include any additional allegations sufficient to preclude application of the law of the case doctrine," *id.*, which holds that "[t]he mere filing of an [a]mended [c]omplaint does not entitle Plaintiff[s] to relitigate [their] claims absent new factual allegations."  *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316–17 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x. 20 (2d Cir. 2015).  Because these duplicative touchpoints all speak to in-person instruction as compared to in-person services, facilities, or opportunities, the Court will not disturb its holding: "the Court dismisses Plaintiffs' breach of contract claim to the extent this claim is based on Defendant's alleged

promise to provide exclusively in-person classes."  (2021 Op. 25; *see also id.* at 13–18 (rejecting

Plaintiffs' argument that the Course Catalog, Kaitlyn's Course Schedule, and the Attendance

Policy created an implied promise of in-person instruction); *id.* at 18–19 (rejecting Plaintiffs'

argument that the Attendance Policy created an implied promise of in-person instruction).)

c.  New Allegations

Because Plaintiffs added allegations regarding content Defendant placed on its website,

all of which speak to in-person "educational services, facilities, access and/or opportunities,"

(SAC ¶ 56), the Court considers these allegations anew.

Plaintiffs put forward new allegations regarding Defendant's "Campus Life" webpage,

which "touts the updated and modern technological facilities available to students, offering a

'hands-on experience,' including the 'Innovation Center' which is 'open to New School students

and faculty 24 hours a day.'"  (*Id.* ¶ 9.)  The same page also allegedly "emphasizes the updated

facilities and materials available to students, including 'a series of extensive labs and information

technology services' such as '[d]igital projectors, surround sound, and active white boards' that

students can use for presentations in the classroom setting."  (*Id.* ¶ 10.)  Plaintiffs also point to

additional notes on Defendant's web pages that speak to "the benefits of its on-campus

facilities," (*id.* ¶ 11), including "its various university performance facilities," (*id.* ¶ 13), as well

as access to the "'University Learning Center,' where students can utilize specialized one-on-one

or group tutoring sessions," (*id.* ¶ 15).

As the Court stated in its prior opinion, detailed promises to furnish facilities can

certainly be "sufficiently specific to be actionable."  (2021 Op. 23.)  Only one of Plaintiffs'

newly added statements evinces such specificity: Defendant's statement regarding the Innovation

Center.  The remaining new allegations regarding impressive and career-improving facilities

simply "tout[]" the benefits of these *potential* services or facilities when they are available to

18

students, therefore more closely resembling marketing "'opinion or puffery' that is 'too vague to be enforced as a contract," *In re Columbia*, 523 F. Supp. 3d at 423 (quoting *Bader*, 657 N.Y.S.2d at 29); *see also Morales v. N.Y. Univ.*, No. 20-CV-4418, 2021 WL 1026165, at *1 n.1 (S.D.N.Y. Mar. 17, 2021) (holding similarly that general references to the advantages or benefits of some opportunities listed in marketing materials were non-actionable statements of "opinion or puffery" (quoting *Bader*, 657 N.Y.S.2d at 29)).

With respect to the lone potentially actionable promise, Defendant's website claims that the "Innovation Center" is "open to New School students and faculty 24 hours a day." (SAC ¶ 9.) But even if the Court were to interpret that such marketing material is "sufficiently specific to be actionable," (2021 Op. 23), Plaintiffs' rights to access this facility is far from unfettered. Rather, Defendant's website contains a broad reservation of rights:

> The information included in the catalogs and all materials of [Defendant] represents the plans of [Defendant] at the time they are made public. [Defendant] *reserves the right to change without notice any matter contained in this publication, including* but not limited to tuition, fees, policies, degree programs, names of programs, course offerings, academic activities, academic requirements, *facilities*, faculty, and administrators. *Payment of tuition for or attendance in any classes shall constitute a student's acceptance of the administration's rights as set forth in this notice.*

(Kozak Aff'n Ex. 2 ("Your Right To Know"), at 1 (emphases added) (Dkt. No. 45-2).)[7] Plainly, this disclaimer explicitly reserves Defendant's right to modify the facility access granted to

---

[7] Additionally, an identical disclaimer is repeated in Defendant's Couse Catalog. (Kozak Aff'n Ex. 1 ("Course Catalog"), at 2 (Dkt. No. 45-1).) Importantly, the Court can consider exhibits submitted by Defendant in support of its Motion.

As stated above, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F.*, 199 F.3d at 107.

"To be incorporated by reference, the [c]omplaint must make a clear, definite[,] and substantial reference to the documents." *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 275 (S.D.N.Y. 2002) (citations omitted). "Where a document is not incorporated by reference, the court may never[the]less consider it where the complaint 'relies heavily upon

students without demanding an explanation or notice, let alone reimbursement.  Thus, Defendant's decision to restrict access pursuant to applicable state law and/or based on public health concerns "represents an exercise of authority expressly reserved to [Defendant], and the exercise of that authority cannot constitute a breach."  *Michel v. Yale Univ.*, 547 F. Supp. 3d 179, 190 (D. Conn. 2021).

This reasoning has been adopted by myriad courts where the disclaimers in question are specific to in-person instruction and absolve universities from liability under a breach of contract theory specific to in-person instruction.  *See, e.g., Freeman v. N.Y. Univ.*, No. 21-CV-1029, 2022 WL 445778, at *2 (S.D.N.Y. Feb. 14, 2022) (holding that because the defendant university "expressively reserved the right to modify 'course offerings, schedules, [and] activities,' including the 'elimination,' 'cancellation,' 'relocation,' or 'modification' of academic activities or programs," "[t]he [p]laintiff has failed to plead an expressed or implied promise to provide exclusively in-person learning"); *Moore v. Long Island Univ.*, No. 20-CV-3843, 2022 WL 203988, at *5 (E.D.N.Y. Jan. 24, 2022) (joining "[o]ther courts in [the Second] Circuit [that] have found that disclaimers in course catalogs with a . . . 'broad scope' mean that 'plaintiffs

---

its terms and effect,' thereby rendering the document 'integral' to the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir. 2021) (alteration in original) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010)).

Here, Plaintiffs expressly refer to both Defendant's Course Catalog and website throughout the Complaint, (*see* SAC ¶¶ 3, 5–7, 36, 75–78, 81 (Course Catalog); *id.* ¶¶ 8–11, 13–16, 61, 76 (Defendant's website)), meaning "[P]laintiff[s] had to rely on their content 'in order to explain what the actual unlawful course of conduct was on which the [d]efendant[] embarked.'" *Pilla v. Gilat*, No. 19-CV-2255, 2020 WL 1309086, at *4 (S.D.N.Y. Mar. 19, 2020) (quoting *Thomas*, 232 F. Supp. 2d at 276). Therefore, the Court considers these documents integral to the SAC and within its purview at this stage. *See Gantt v. Ferrara*, No. 15-CV-7661, 2017 WL 1192889, at *14 (S.D.N.Y. Mar. 29, 2017) (finding documents were integral to the complaint where the plaintiff "relied heavily upon [them] in framing the [c]omplaint" (alterations in original) (citation omitted)); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 269 (S.D.N.Y. 2005) (same).

cannot plausibly allege that [the defendant] breached its contract in violation of the catalog's statement that certain classes would be held in person"); *Romankow*, 2021 WL 1565616, at *3–4 (concluding that a disclaimer in the school's bulletin made "clear that [the institution] expressly reserved the right to change, relocate, and/or modify its course offerings"); *Smith v. Univ. of Penn.*, 534 F. Supp. 3d 463, 474, (E.D. Pa. 2021) ("[The university] retained [through its 'Suspension of Normal Operations' provision] the right to modify and cancel classes if the circumstances called for it, further underscoring the lack of a guarantee of in-person instruction."); *Dougherty v. Drew Univ.*, 534 F. Supp. 3d 363, 378, (D.N.J., 2021) ("If, viewed in contractual terms, the [plaintiffs] paid the University tuition in exchange for an education which the University expressly provided that it could modify, then the [plaintiffs] have no claim of breach based on the University's having provided such a modified education."), *reconsideration denied sub nom. Dougherty v. Univ.*, 2021 WL 2310094 (D.N.J. June 7, 2021).  The Court sees no reason as to why this reasoning would not apply with equal force with regard to in-person learning experiences beyond classroom instruction.

Plaintiffs aim to undermine Defendant's argument by relying on *Bergeron*, where the court held that the university's "so-called disclaimer" was insufficiently broad to immunize the defendant university from breach of contract claims following its Covid-19-driven shutdown, *see* 2020 WL 7486682, at *7.  (*See* Pls.' Mem. 9–10.)  However, Plaintiffs try to stretch *Bergeron* much too far.  Given the chasmic difference between the disclaimers in *Bergeron* and the one in this Action, the cases are plainly distinguishable from one another.  In *Bergeron*, the disclaimer, in relevant part, reads: "[The university] reserves the right to alter any of its *courses* at any time." 2020 WL 7486682, at *7 (citation omitted) (emphasis added).  In other words, this disclaimer speaks *only* to the university's course instruction, while the *Bergeron* plaintiffs' "allegations

clearly extend beyond coursework to the entirety of the educational experience." *Id.*
Accordingly, the *Bergeron* court found the narrow disclaimer insufficient. *Id.* However, the
*Bergeron* disclaimer is a far cry from Defendant's exceedingly broad and fully encompassing
disclaimer, which includes both classrooms and facilities, (*see* Your Right To Know
("[Defendant] *reserves the right to change without notice any matter contained in this
publication, including* but not limited to tuition, fees, policies, degree programs, names of
programs, course offerings, academic activities, academic requirements, *facilities*, faculty, and
administrators." (emphases added))). *See Bridget McCarthy v. Loyola Marymount Univ.*, No.
20-CV-4668, 2021 WL 268242, at *5 (C.D. Cal. Jan. 8, 2021) (rejecting a disclaimer argument
in reliance on *Bergeron* because the university's disclaimer was insufficiently broad, speaking
only to changes regarding "degree program requirements, academic and administrative polices
and regulations, financial charges, and course offering" and not including additional non-
classroom related to facilities and offerings).  Accordingly, the Court is not persuaded that
*Bergeron* sufficiently rebuts Defendant's argument concerning the relevant disclaimer.

 Plaintiffs' reliance on a pre-Covid university breach of contract case, *Deen v. New Sch.
Univ.*, No. 05-CV-7174, 2007 WL 1032295, (S.D.N.Y. Mar. 27, 2007), is similarly unavailing.
(*See* Pl.'s Mem. 10.)  The *Deen* plaintiffs were current and former drama students at the same
university in this Action who sued following the university's dissolution of its partnership with
The Actors Studio, a separate, prestigious organization with which the university partnered.  *See*
2007 WL 1032295, at *1.  Because the dissolution prompted changes in the drama program,
including modifying the courses and facilities as well as a unique degree jointly awarded, the
students brought breach of contract claims.  *See id.*  Ultimately, the *Deen* court granted summary
judgment for the university on all breach of contract claims related to modification of

instructional methods, course offerings, faculty, and facilities, each of which sufficiently

disclaimed from a nearly identical disclaimer.  *See id.* at *4–5.  The claims on which the *Deen*

court granted summary judgment are directly analogous to the claims in this Action.

The only breach of contract claim the *Deen* court denied summary judgment pertained

specifically to the degree conferred; the university's disclaimer in that case—like this Action—

did not *expressly* include the degree to which students are entitled, meaning the university would

not be within its right pursuant to the disclaimer to change the degree without notice.  *See id.* at

*3–4.  Here, Plaintiffs do not quarrel with the degree ultimately conferred, nor can Plaintiffs

reasonably argue that the disclaimer fails to incorporate the very facilities about which they

claim breach of contract.  Accordingly, *Deen* similarly cannot salvage Plaintiffs' breach of

contract claims and they are therefore dismissed.

### 3.  Failure to State a Claim for Unjust Enrichment

"The basic elements of an unjust enrichment claim in New York require proof that (1)

defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate

against permitting defendant to retain what plaintiff is seeking to recover."  *Briarpatch Ltd., L.P.*

*v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004); *see also Kaye v. Grossman*, 202 F.3d

611, 616 (2d Cir. 2000) (holding that, under New York law, a claim for unjust enrichment

demands that a plaintiff allege "1) that the defendant benefitted; 2) at the plaintiff's expense; and

3) that equity and good conscience require restitution." (internal quotation marks omitted)).

Unjust enrichment "lies as a quasi-contract claim" that "contemplates 'an obligation imposed by

equity to prevent injustice, in the absence of an actual agreement between the parties,'" *Ga.*

*Malone & Co. v. Rieder*, 973 N.E.2d 743, 746 (N.Y. 2012) (citation omitted), and such claims

are available "only in unusual situations when, though the defendant has not breached a contract

nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff," such as when "the defendant, though guilty of no wrongdoing, has received money to which he or she is not entitled," *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012).  However, "[a]n unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim."  *In re Columbia*, 523 F. Supp. 3d at 430 (quoting *Corsello*, 967 N.E.2d at 1185); *see also Stanley v. Direct Energy Servs., LLC*, 466 F. Supp. 3d 415, 430–31 (S.D.N.Y. 2020) (gathering authorities for the proposition that "where the validity of a contract that governs the subject matter at issue is not in dispute, and the claimant alleges breach of the contract, the claimant cannot plead unjust enrichment in the alternative under New York law").

Defendant argues that Plaintiffs' claim for unjust enrichment, (*see* SAC ¶¶ 87–93), is duplicative of its breach of contract claim and thus must be dismissed, (Def.'s Mem. 21–22). Defendant alternatively argues that Plaintiff has not sufficiently plead the elements of such an unjust enrichment claim, even if they were entitled to assert such a claim.  (*Id.* at 22–23.) Plaintiffs rebut Defendant by framing the latter's argument as questioning the existence of a contract.  (Pls.' Mem. 18–19.)

Plaintiffs plainly misconstrue Defendant's argument: Defendant does not "disput[e] the nature and existence" of a contract, implied or otherwise, (*id.*); as the Court noted in its prior opinion, "[t]hough the Parties dispute the scope of the contractual relationship, and whether it encompassed certain promises and obligations, they do not contest the existence of the contractual relationship itself," (2021 Op. 28 n.8).  Defendant has not abandoned this argument, but only reaffirmed and elucidated its position as to what it promised Kaitlyn following her matriculation to the university and her subsequent payment of tuition.  (*See* Def.'s Mem. 9–21;

Def.'s Reply Mem. 3–10.)  To that end, Defendants are correct that "Plaintiffs' unjust enrichment claim must be dismissed as duplicative of Plaintiffs' breach of contract cause of action."  (Def.'s Mem. 21; *see also* 2021 Op. 28–29 (collecting cases to show that a university student plaintiff cannot sustain an unjust enrichment claim where there exists a contract or quasi-contract between the plaintiff and the university if the alleged unjust enrichment replicates the breach of contract action).)[8]

---

[8] Additionally, the Court notes that Plaintiffs' claims for unjust enrichment would also fail on the merits.  "When assessing considerations of equity and justice, courts generally consider, among other things, 'whether the defendant's conduct was tortious or fraudulent.'" *Hassan v. Fordham Univ.*, 515 F. Supp. 3d 77, 93 (S.D.N.Y. 2021) (quoting *Clark v. Daby*, 751 N.Y.S.2d 622, 624 (App. Div. 2002)), *opinion amended and superseded on other grounds*, 533 F. Supp. 3d 164 (S.D.N.Y. 2021).  Because Plaintiffs failed to allege any facts that "rise to the level of tortious or fraudulent conduct sufficient to support an unjust enrichment claim," *Hassan*, 533 F. Supp. 3d at 169, Plaintiffs' unjust enrichment claims must be dismissed.

### III.  Conclusion

For the foregoing reasons, Defendant's Motion is granted and the Complaint is dismissed with prejudice.  *See Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around"); *Maione v. Zucker*, No. 18-CV-7452, 2022 WL 784483, at *9 (S.D.N.Y. Mar. 15, 2022) (granting motion to dismiss with prejudice where "[the] [p]laintiff has already had two bites at the apple, and they have proven fruitless" (quoting *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016)); *Bryant v. Capra*, No. 18-CV-10198, 2021 WL 323263, at *5 (S.D.N.Y. Feb. 1, 2021) (same).[9]  The Clerk is respectfully directed to terminate the Motion to Dismiss, (Dkt. No. 44), and to close this case.

SO ORDERED.

DATED:      May 6, 2022
            White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[9] "[T]o the extent that Plaintiff[s] seeks to represent a proposed class, those allegations cannot survive where Plaintiff[s'] individual claims have failed to state a claim, as they have failed to do so here."  *Poughkeepsie Waterfront Dev. LLC v. Travelers Indem. Co. et al.*, No. 20-CV-4890, 2021 WL 4392304, at *3 n.4 (S.D.N.Y. Sept. 24, 2021).  Thus, the Court will not consider allegations related to the proposed class.